UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| CHARLOTTE A. FLANARY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6:20-CV-00189-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION AND** |
| ANDREW M. SAUL, ) | **ORDER** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on cross-motions for Summary Judgment. [R. 19, R. 23]. The Plaintiff, Charlotte Flanary, exhausted her administrative remedies and brought this action under 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. The Court, having reviewed the record and the parties' motions, affirms the Commissioner's decision.

**I.     Procedural and Factual Background**

On July 20, 2017, Flanary protectively filed applications for DIB and SSI, alleging she became disabled on July 20, 2017. [R. 12-1, p. 41]. Her applications were initially denied and again on reconsideration, after which she requested a hearing before Administrative Law Judge (ALJ) Joyce Francis. *Id.* at 153–54, 199–200, 234. ALJ Francis held a hearing on July 1, 2019, and subsequently issued an unfavorable decision on August 19, 2019, finding Flanary was not disabled since July 20, 2017. *Id.* at 41–52, 53–74. The Appeals Council denied Flanary's request for review, and ALJ Francis's decision became the final decision of the Commissioner. *Id.* at 6–9. Flanary then filed her Complaint against the Commissioner in this Court. [R. 2].

## II. Standard of Review

This Court's review of the Commissioner's decision is limited to determining whether it is supported by "substantial evidence" and made in accordance with proper legal standards. *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations omitted). "Substantiality must also be based on the record 'as a whole.'" *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980)). However, "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ," the Court must uphold the Commissioner's decision. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). This Court cannot review the case de novo, resolve conflicts of evidence, or decide questions of credibility. *Cutlip*, 25 F.3d at 286; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"When a claimant files an application for benefits under the same title of the Social Security Act as a previously determined application, the principal of *res judicata* places limits on the evidence that an ALJ evaluating the second application can review." *Lingar v. Berryhill*, 2019 U.S. Dist. LEXIS 17954, at *3 (E.D. Ky. Feb. 5, 2019). The Sixth Circuit has established that "the principles of res judicata can be applied against the [SSA] Commissioner." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). "When the Commissioner has made a

final decision concerning a claimant's entitlement benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is also bound by the findings of a previous ALJ. *Id.* (citing *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987)).

In light of the holding in *Drummond*, the Commissioner issued an Acquiescence Ruling directing the Sixth Circuit to follow *Drummond* by applying res judicata to a prior assessment of a claimant's residual functional capacity (RFC) as well as other findings required in the sequential evaluation process for determining disability. *Lingar*, 2019 U.S. Dist. LEXIS 17954, at *3–4. The Ruling states as follows:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSAR 98–4(6), 1998 SSR Lexis 5, 63 FR 29771. Accordingly, a prior ALJ's RFC determination must not be altered unless new and material evidence is presented showing that the plaintiff's condition has significantly changed. *Lingar*, 2019 U.S. Dist. LEXIS 17954, at *4 (citing *Drummond*, 126 F.3d at 842). The burden is on the plaintiff to show that her condition has worsened to the point that she is no longer able to perform substantial gainful activity. *Priest v. Soc. Sec. Admin.*, 3 F. App'x 275, 276 (6th Cir. 2001) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232–33 (6th Cir. 1993)).

**III.  The ALJ's Determination**

To determine disability under the Social Security Act, the ALJ must conduct a five-step analysis. 20 C.F.R. § 404.1520.

1. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.

2. Second, plaintiff must show that she suffers from a "severe impairment" to warrant a finding of disability.

3. Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.

4. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.

5. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). If the ALJ makes a dispositive finding at any point in the five-step analysis, the review terminates. *Id.*; 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof during the first four steps; this burden shifts to the Commissioner at step five to prove the availability of other work in the national economy that the claimant is capable of performing. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The claimant always retains the burden of proving lack of RFC.[1] *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

Prior to evaluating Flanary's current case, ALJ Francis considered Flanary's previous application for DIB and SSI, which had resulted in an unfavorable decision on May 2, 2016. [R. 12–1, pp. 86–99]. In accordance with Social Security Regulations and *Drummond*, ALJ Francis determined that the previous unfavorable decision was final and binding, but that Flanary's current application presented "updated medical evidence" which supports "a reduced

---

[1] An individual's residual functional capacity is the most an individual can still do despite his or her impairment-related limitations. 20 C.F.R. § 416.945 (a)(1).

[RFC]." *Id.* at 42. Consequently, and as required by the Sixth Circuit, ALJ Francis considered the new evidence in determining whether changes to the prior ALJ's findings and conclusions were necessary. *See Drummond*, 126 F.3d at 842.

ALJ Francis followed the five-step evaluation process as required by SSA regulations. [R. 12-1, pp. 41–52]. At step one, ALJ Francis found Flanary had not engaged in substantial gainful activity since July 20, 2017, the alleged onset date. *Id.* at 44. At step two, ALJ Francis found Flanary had various severe impairments: obesity, chronic obstructive pulmonary disorder (COPD), posttraumatic stress disorder (PTSD), depression, low back pain, cyst of the right knee, and arthritis of the right hand. *Id.* At step three, ALJ Francis determined Flanary did not have an impairment or combination of impairments that met or medically equaled in severity one of the listed impairments. *Id.* at 45. At step four, ALJ Francis determined Flanary's RFC assessment, finding that she could perform "sedentary work"[2] with the following limitations:

> The claimant can frequently climb ramps and stairs and never climb ladders, ropes, or scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant can frequently handle and finger with the right upper extremity. The claimant can tolerate occasional exposure to extreme cold, extreme heat, and humidity. The claimant must avoid all exposure to pulmonary irritants such as fumes, odors, dust, gases and poorly ventilated areas. The claimant can understand and remember simple instructions and procedures. The claimant can sustain attention and concentration to complete tasks with regular breaks every 2 hours during an 8-hour workday. The claimant can interact occasionally with supervisors, coworkers, and the public. The claimant can adapt to routine work conditions and occasional work place changes gradually introduced.

*Id.* at 46–47.

Based on this RFC and the testimony of a vocational expert (VE), ALJ Francis determined that Flanary could not perform any past relevant work. *Id.* at 50. Thus, she proceeded

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

to step five, where she determined that Flanary could perform other jobs existing in significant numbers in the national economy. *Id.* at 50–51. Accordingly, ALJ Francis found Flanary was "not disabled." *Id.* at 51.

## IV. Analysis

On appeal, Flanary claims to make only one argument: ALJ Francis's determination that she is not disabled is not supported by substantial evidence because ALJ Francis failed to properly evaluate her subjective complaints of pain. [R. 19–1, p. 8]. However, upon review of Flanary's Motion, the Court finds that Flanary presents a second argument: ALJ Francis erred when she did not give Dr. Syed Raza, Flanary's treating psychiatrist, "great weight." *Id.* at 10. While this second argument was not clearly outlined, out of an abundance of caution, the Court will address both issues.

### A. Dr. Syed Raza

The RFC finding is the ALJ's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c). The ALJ makes this determination based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). In making the RFC determination, the ALJ must evaluate the persuasiveness of the medical source statements in the record and the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a). As Flanary filed her application after March 27, 2017, the new regulations for evaluating medical opinions are applicable to her case. *See* 20 C.F.R. § 404.1520c.

The new regulation states that "[an ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, an

6

ALJ will evaluate the "persuasiveness" of medical opinions and prior administrative findings by utilizing the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors that tend to support or contradict a medical opinion or prior administrative medical findings. 20 C.F.R. § 404.1520c(c)(1)–(5). The most important factors are supportability[3] and consistency.[4] 20 C.F.R. § 404.1520c(a), (b)(2). The ALJ is required to explain how she considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). ALJs, however, "may, but are not required to, explain how" they considered the other three factors in determining the persuasiveness of the medical source's opinion. *Id.*

In her Motion, Flanary asserts that ALJ Francis erred when she "overlooked and ignored" the medical opinion of Dr. Syed Raza, her treating psychiatrist, instead of giving it "great weight." [R. 19–1, p. 10]. Flanary argues ALJ Francis should have given more credence to Dr. Raza's "Medical Assessment of Ability to Do Work–Related Activities" form, which severely limited Flanary's abilities. *Id.* at 9; [R. 12–1, pp. 1179–80]. Specifically, Dr. Raza marked that Flanary had a "poor" ability to deal with the public, deal with work stresses, and maintain attention/concentration. [R. 12–1, p. 1179]. He also found that Flanary had a "poor" ability (1) to understand, remember, and carry out complex job instructions; (2) to understand, remember, and carry out detailed, but not complex job instructions; (3) to understand, remember, and carry out simple job instructions; and (4) to relate predictably in social situations. *Id.* at 1180. In support of

---

[3] "The more relevant the objective medical evidence and supporting explanations presented by the medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).
[4] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be. 20 C.F.R. § 404.1520c(c)(2).

7

his assessment, Dr. Raza briefly cited Flanary's traumatic childhood, depression, COPD, arthritis, and memory issues. *Id.* at 1179–80.

However, Flanary's use of the phrase "great weight" in her argument suggests that she believes that ALJ Francis should have evaluated Dr. Raza's medical opinion under 20 C.F.R. § 404.1527. However, as explained above, because Flanary's claim was filed after March 27, 2017, the rules of 20 C.F.R. § 404.1527[5] do not apply. Instead, the controlling regulation is 20 C.F.R. § 404.1520c. Therefore, the Court will analyze ALJ Francis's evaluation of Dr. Raza's opinion in accordance with the applicable regulation. ALJ Francis's assessment of Dr. Raza's medical opinion is stated as follows:

> The treating source statement of Syed Raza, M.D., is not persuasive (Exhibit B18F). Multiple extensive limitations were given. The limits given are inconsistent with the claimant's presentation on multiple treating evaluations, including independent psychological consultative examinations. Furthermore, the treatment history is limited and generally does not support the limits to the extent alleged given observations of the claimant's unremarkable mental status on multiple evaluations.

[R. 12–1, p. 50].

This assessment is consistent with the new regulation because ALJ Francis acknowledged Dr. Raza's "relationship with [Flanary]" and evaluated the persuasiveness of the opinion by utilizing the two most important factors, supportability and consistency. *See* 20 C.F.R. § 404.1520c(a), (b)(2), (c)(3). ALJ Francis explained that Dr. Raza's limitations were inconsistent with the findings of other medical evaluations, including his own and one performed by Dr. William Rigby, an independent psychological consultative examiner. [R. 12–1, p. 50]. ALJ Francis, then, further explained that Flanary's treatment history and numerous mental status evaluations do not support the extent of Dr. Raza's limitations. *Id.*; *see* 20 C.F.R. § 404.1520c(b)(2).

---

[5] This section only applies to claims filed before March 27, 2017. *See* 20 C.F.R. § 404.1527.

While ALJ Francis does not go into detail in her short assessment of Dr. Raza's opinion, the Court is able to derive the findings that support ALJ Francis's conclusion by evaluating the entirety of her opinion. *See Smith v. Comm'r of Soc. Sec.*, No. 3:20 CV 4, 2021 U.S. Dist. LEXIS 30863, at *9 (N.D. Ohio Feb. 19, 2021) (quoting *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011)) ("The Sixth Circuit has held that an ALJ's explanation should be sufficient 'to allow the appellate court to trace the path of [her] reasoning.'"). Thus, when assessing Dr. Raza's opinion, ALJ Francis did not need to repeat all the medical evidence that undercut Dr. Raza's opinion because she listed that evidence elsewhere in her opinion. *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (holding ALJ stated good reasons where the ALJ listed the treatment records that were inconsistent with the treating physician's opinion "elsewhere in her opinion."). Ultimately, ALJ Francis's conclusion is supported by substantial evidence.

First, while ALJ Francis acknowledged that Flanary has a "mild limitation" in understanding, remembering or applying information, she also noted Flanary's medical records and counseling notes do not show any "notable issues with memory," but instead illustrate that Flanary's intelligence is "estimated to be in the range of average or only slightly below average." [R. 12–1, p. 45]. To support her conclusion, ALJ Francis cited to Flanary's December 2017 examination with Dr. Rigby, a consultative psychologist, where Dr. Rigby found that Flanary had no impairments that affected her ability to understand, retain, and follow simple instruction, or to sustain concentration and persistence to complete tasks in a normal time. *Id.* at 966, 971. Dr. Rigby also determined Flanary's intelligence to be "average or only slightly below average." *Id.* at 967. In addition, ALJ Francis cited to numerous counseling notes taken by Cumberland River Behavorial Health therapist Toni Linville, which consistently stated that Flanary had no

9

developmental delays, "normal" insight, judgment and thought content, and "clear" speech and thought. *Id.* at 45, 1105–06, 1108–09, 1114–15, 1117–18.

Second, ALJ Francis acknowledged that Flanary has a "moderate limitation" in interacting with others, which has allegedly caused isolation, anxiety, depression, and "inappropriate behavior with care providers." *Id.* at 45. However, upon review of numerous medical and counseling records, ALJ Francis concluded that Flanary's general disposition is cooperative, agreeable, and appropriate. *Id.* at 45. During his examination of Flanary, Dr. Rigby found Flanary to be "fully cooperative" and "reliable" even though she was depressed. *Id.* at 967, 970. Dr. Raza and Flanary's therapists have also found her to be "alert, attentive, friendly and cooperative" on many occasions despite her anxiousness or depressive state. *Id.* at 1108–09, 1118, 1142, 1159, 1167, 1172, 1174–75. In addition, and as noted by ALJ Francis, treating notes have stated that Flanary's mood and affect have been "normal" and appropriate and that she consistently maintains "average" eye contact on most occasions. *Id.* at 45, 490, 1108, 1117, 1167, 1172, 1174–75, 1077, 1080, 1084, 1088, 1091, 1205–06, 1213, 1263, 1272, 1273, 1276.

Third, ALJ Francis acknowledged Flanary's "moderate limitation" regarding concentration, persistence, or maintenance of pace, which has allegedly caused Flanary poor sleep, low energy, and a sense of being overwhelmed. *Id.* at 46. However, ALJ Francis pointed to Dr. Rigby's examination to illustrate that Flanary "has not consistently shown impaired concentration." *Id.* Dr. Rigby found that Flanary had no impairments that affected her ability to understand, retain, and follow simple instruction, or to sustain concentration and persistence to complete tasks in a normal time. *Id.* at 966, 971. He also found that even though Flanary suffered from an impairment to maintain social interactions with others and to adapt and respond to the pressures of a normal workday, the impairment was only

10

moderate.[6] *Id.* at 971. Flanary was also noted to be "fully alert, oriented … free of psychotic symptoms" and lacking "manifestations of anxiety." *Id.* at 967. Further, Dr. Rigby assigned Flanary a Global Assessment of Functioning (GAF)[7] score of 65, which indicates mild symptoms. *Id.* at 970.

Fourth, ALJ Francis concluded that although Flanary has a "mild limitation" in adapting or managing herself, which has allegedly limited her ability to perform household tasks and caused inappropriate behavior towards others, Flanary is capable of being appropriate and has generally presented with an "appropriate appearance and good hygiene." *Id.* at 46. Dr. Rigby found Flanary to be "fully cooperative" and Flanary "denie[d] having any problems with bathing and getting dressed." [R. 12–1, pp. 967, 969]. Flanary's therapists have also consistently described her to be appropriately dressed, friendly and cooperative, hygienic, and well groomed. *Id.* at 1108–09, 1170, 1172, 1174–75. In addition, ALJ Francis considered that Flanary's treatment has been "inconsistent" (especially prior to 2017), and that her inability to do household tasks arises more from physical impairments than mental. *Id.* at 46.

Lastly, the "multiple treating evaluations" mentioned by ALJ Francis in her assessment of Dr. Raza's opinion provided the following information in support of her decision to discount Dr. Raza's opinion: Most notably, on January 7, 2019, the day before Dr. Raza formed his discounted opinion, Dr. Raza noted Flanary was alert, of normal mood and affect, and had intact memory and coherent thinking. *Id.* at 1199. These results are consistent with the findings of Dr. Cook, Flanary's physician at Jenkins Family Clinic, on

---

[6] Moderate is defined as "limited but satisfactory." [R. 12–1, p. 970].
[7] The GAF is "a scoring system that mental health professionals use to assess how well an individual is functioning in their daily lives" and a score of "70 to 61" is indicative of mild symptoms. Rachel Nall, *What Does My GAF Score Mean?*, HEALTHLINE (Sept. 18, 2018), https://www.healthline.com/health/gaf-score.

11

January 10, 2019, which stated that Flanary "report[ed] no depression, no anxiety, no insomnia, no stress and no loss of interest." *Id.* at 1258. Further, on April 5, 2018, Flanary answered "no" when she was asked by therapist Toni Linville whether she felt like she had any impairments that limited her vocational success. *Id.* at 1107. Flanary gave the same response when she was asked the same question again on May 23, 2018. *Id.* at 1116. On April 23, 2018, Dr. Raza reported that Flanary had a GAF score of 70, which indicates mild symptoms. *Id.* at 1100; [R. 23, p. 12]. Flanary also reported to Dr. Raza that the prescribed medications were helping by increasing her energy, bettering her concentration, and decreasing her irritability. [R. 12–1, pp. 49, 1164, 1166].

Thus, based on the record discussed above, ALJ Francis's conclusion that Dr. Raza's medical opinion is unpersuasive due to its lack of supportability and consistency is supported by substantial evidence. It also comports with the requirements of 20 C.F. R. § 404.1520c. As a result, the Court will not disturb ALJ Francis's determination.

### B. Evaluation of Subjective Complaints of Pain and Mental Symptoms

The ALJ may consider a claimant's credibility in weighing allegations of pain. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d. 525, 531 (6th Cir. 1997). Under the regulations, however, a claimant's "subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability." *Duncan v. Sec'y of Health Servs.*, 801 F.2d 847, 852 (6th Cir. 1986) (citing 20 C.F.R. § 404.1529); *see also* 42 U.S.C. § 423(d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…"). There must also be objective medical evidence of an underlying condition supporting allegations of pain. *Duncan*, 801 F.2d at 852. The Sixth Circuit evaluates subjective complaints of pain by way of a two-pronged test:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Felisky v. Bowen*, 35 F.3d 1027, 1038–39 (6th Cir. 1994) (quoting *Duncan*, 801 F.2d at 853). The second prong of the test constitutes two alternatives, meaning a claimant must meet only one of the two elements. *Id.* at 1039.

If the claimant establishes one of those requirements, the SSA regulations direct the ALJ to consider the following factors in evaluating the claimant's subjective statements about the intensity and persistence of pain or other symptoms: (1) daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment other than medications received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms, such as lying down; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)–(vii). While the ALJ should consider the factors, she is not required to address each one in her opinion. *See Brewer v. Berryhill*, No. 6:16-cv-00108-GFVT, 2017 U.S. Dist. LEXIS 97075, at *14-15 (E.D. Ky. June 22, 2017) ("The regulations do not require a detailed, item-by-item discussion of each credibility factor…and although the ALJ should consider the factors, the ALJ need not engage in such an extensive analysis in every decision, especially where the medical record does not objectively support the claimant's allegations.").

"However, even when the medical records confirm the requisite objective medical condition supporting the claimant's complaints, 'an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a

determination of disability.'" *Id.* at 10 (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003)). An ALJ's credibility findings are "to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531 (citing *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)). The federal courts will not substitute their own credibility determination for that of the ALJ as the fundamental task of the Commissioner is to "resolve conflicts in the evidence and to decide questions of credibility." *Felisky*, 35 F.3d at 1035. However, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters*, 127 F.3d at 531 (citation omitted).

Flanary contends that the RFC determination is not supported by substantial evidence because ALJ Francis failed to properly evaluate Flanary's subjective complaints of pain and mental symptoms. [R. 19–1, pp. 8–12]. Flanary alleges that her medical issues cause the following symptoms: joint pain; persistent arthritis in her hip and lower back; the ability to only walk 10 minutes, stand 20–25 minutes, and sit 25 minutes; the inability to lift or carry objects greater than 10 pounds; knee pain that limits her ability to walk and stand; COPD that requires frequent use of inhalers; arthritis in her hands; locking up of thumbs; poor grip; limited relief from medication; ongoing mental symptoms; poor concentration; anxiety (that worsens about once a month); inability to get in the shower on her own; reliance on a counselor; and inability to do household chores. [R. 12–1, p. 47].

ALJ Francis determined that Flanary suffered from the following medically determinable impairments: obesity, COPD, PTSD, depression, low back pain, cyst of the right knee, and arthritis of the right hand. *Id.* at 44. This finding is supported by substantial evidence. Accordingly, the first prong of the test is satisfied. However, ALJ Francis also found:

> [Flanary's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Flanary's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record …

*Id.* at 47. Since ALJ Francis considered a number of factors that suggest that Flanary's impairments were not as severe as alleged, the Court concludes that substantial evidence also supports this finding.

As noted by ALJ Francis, the overall record does not support the alleged severity of Flanary's joint impairments and back pain, even with consideration of her obesity. *Id.* at 48. Despite ongoing tenderness and an enlarged thyroid, imaging and evaluations of Flanary's hip resulted in a majority of normal findings: no bony abnormalities; normal gait; normal range of motion; no muscle atrophy; and intact joint alignment. *Id.* at 48, 433, 440–41, 482, 682, 685, 690, 693, 811, 1159, 1198, 1224, 1273. The same can also be said for evaluations of Flanary's back. *Id.* at 48. In addition, while the record does show Flanary's history of intermittent pain to her right hand, imaging in 2013 and 2017 revealed no bony abnormalities. *Id.* at 48, 479, 845. Upon evaluation, Flanary's hand exhibited normal strength and range of motion in her fingers. *Id.* at 48, 440. Flanary also reported improvement and pain relief from medication and physical therapy, and ALJ Francis accounted for Flanary's knee pain (which has been treated with injections and aspiration) and joint tenderness when formulating Flanary's RFC. *Id.* at 48, 50, 505, 656.

Flanary's 2019 x-ray of her chest was "negative for any infiltrates and acute or chronic changes." *Id.* at 48, 1266, 1270. A 2017 x-ray was also negative for infiltrates, consolidations, and effusions, and showed no "pulmonary vascular congestion" or "significant interval change." *Id.* at 988. ALJ Francis also recognized that Flanary's COPD can be stabilized with medication, that Flanary's hypoxia (at night) has also been managed via oxygen therapy, and that Flanary has

15

not been hospitalized for chest–related issues since 2017, when she left the hospital against medical advice. *Id.* at 48, 225, 504, 646.

Further, ALJ Francis appropriately considered that Flanary's treatment has been "sporadic" and "conservative" in nature. *Id.* at 46, 50; *see also Tweedle v. Comm'r of Soc. Sec.*, 731 F. App'x 506, 507 (6th Cir. 2018) (stating the ALJ appropriately considered the claimant's conservative treatment in discounting his claim of disabling pain); SSR 16–3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints … [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of the record.").

As for mental health, the Court has made clear that ALJ Francis did not ignore Flanary's alleged symptoms, but rather acknowledged and discounted them based off of the evidence in the record. While Flanary has been violent or profane with care providers in the past, ALJ Francis noted that Flanary generally presents with an appropriate appearance and agreeable disposition. *Id.* at 46, 49, 50, 66, 1108–09, 1142, 1164, 1166–67, 1172, 1174–75, 1188–92. In her independent psychological consultative examination with Dr. Rigby, Flanary was found to be cooperative and "free of major mental illness …" *Id.* at 49, 967, 970. Primary care notes have also been consistently limited on mental symptoms or issues with mood or affect. *Id.* at 49, 490, 1077, 1080, 1084, 1088, 1091, 1205, 1213, 1263, 1272, 1273, 1276. In fact, on several occasions, which were cited by ALJ Francis, Flanary denied suffering from mental impairments, including but not limited to depression, mood swings, and anxiety. *Id.* at 49, 1205, 1263, 1266.

Flanary's counselors have consistently found Flanary's appearance to be "normal," her eye contact to be "average," and her "affect" to be appropriate. *Id.* at 49, 1108, 1117, 1142, 1158.

16

ALJ Francis also noted that though Flanary's care for her mental impairments has been "intermittent," medications have been effective in abating her symptoms (and increasing her energy levels) and no further treatment has been required, including hospitalization. *Id.* at 49, 1164, 1166. ALJ Francis also considered the impact Flanary's mental impairments could have on her ability to do household tasks, concluding that "most of Flanary's issues with doing household tasks arise from physical impairments, not mental." *Id.* at 46. Finally, ALJ Francis did not ignore recent developments in Flanary's mental health but adjusted the RFC to reflect her finding of "restrictions to simple instructions, limited social contact, and management of adapting to changes." *Id.* at 49.

In evaluating Flanary's credibility, ALJ Francis considered many of the requisite factors, clearly explained her reasoning, and, as required by 20 C.F.R. § 404.1529(c)(4), considered the inconsistencies in the evidence. Thus, after having properly analyzed the record and Flanary's testimony, ALJ Francis chose not to rely on subjective reports about symptoms to establish the alleged disability. The Court finds this decision to be appropriate, and therefore, will uphold ALJ Francis's evaluation of Flanary's subjective complaints of pain and mental symptoms because it is clear—after a comprehensive review of the entire record, administrative hearing, and medical documents—that ALJ Francis's findings were reasonable and supported by substantial evidence. *See Coney v. Comm'r of Soc. Sec.*, No. 1:12–CV–800, 2014 U.S. Dist. LEXIS 21290, at *26 (W.D. Mich. Jan. 31, 2014) ("[S]o long as the ALJ's determination is supported by substantial evidence, it must stand."); *see also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)) ("The Commissioner of Social Security's decision must be affirmed if substantial evidence supports it, even if substantial evidence would support an opposite conclusion.").

V. **Conclusion**

Based on the Court's review of ALJ Francis's decision, the Court finds that it is supported by substantial evidence and was made in accordance with proper legal standards. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); 42 U.S.C. § 405(g). Therefore, the Court will grant the Commissioner's Motion for Summary Judgment.

Accordingly, for the reasons stated above,

**IT IS ORDERED** as follows:

1. The Plaintiff's Motion for Summary Judgement **[R. 19]** is **DENIED**.

2. The Commissioner's Motion for Summary Judgment **[R. 23]** is **GRANTED**.

3. The decision of the Commissioner is **AFFIRMED**.

4. A judgment will be entered contemporaneously with this Order.

This the 29th day of November, 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY